Alonzo J. Prey, S.
This is a proceeding on the application of the petitioners, who seek an order authorizing and directing the County Treasurer of the County of Cattaraugus to pay to said petitioners the sum of $4,226.26, plus interest, as attorneys in fact for Kuzma Dmitrievich Kuzmich, also known as Kuzma Kuzmicz, with accrued interest thereon, he being á Russian national and a brother of the deceased, Mike Kuzmic, also known as Mike Kuzmicz.
Mike Kuzmic died at the Village of Gowanda on or about the 21st day of April, 1957. At that time the allegations set forth in the petition for letters of administration by Ralph N. Shaack, a creditor, alleged that there were no known distributees. Thereafter, through the efforts of Andrew J. Musaechio, attorney for the administrator, three distributees were located, namely, Kuzma Kuzmicz, Barbara Kochowicz, and Feoder D. Kuzmicz. The accounts of Ralph N. Shaack, the administrator, were judicially settled by an order of this court dated June 4, 1958, by which it was decreed that the balance of funds remaining in the hands of the administrator, after payment of all bills and expenses of the administration, to wit, the sum of $8,452.52, be paid as follows: 50% thereof to Kuzma Kuzmicz, the brother of the deceased; 25% to Barbara Kochowicz, a niece of the deceased; and 25% to Feoder D. Kuzmicz, a nephew of the deceased. The niece, Barbara Kochowicz, resides in Argentina and the share payable to her was duly transmitted to her. The shares of Kuzma Kuzmicz and Feoder D. Kuzmicz were directed to be paid into the hands of "the County Treasurer of this county pursuant to section 269 [now § 269-a] of the Surrogate’s Court Act subject to the further order of the court.
There is no dispute as to the fact that Kuzma Kuzmicz and his nephew, Feoder D. Kuzmicz are residents of the U. S. S. R. *605 The brother of the deceased, Kuzma Kuzmicz, by a duly executed power of attorney, has designated the petitioners, Wolf, Popper, Ross, Wolf and Jones, attorneys at law, 635 Madison Avenue, New York, New York, as his attorneys in fact with power to receive said funds and to do everything necessary which he could do if he were present in court to obtain the funds which are allegedly due him. The power of attorney is duly authenticated by Consul of the United States in Moscow and certificates of translation are properly and duly attached to said power of attorney.
The question which arises in this proceeding is found in the language of section 269 [now § 269-a] of the Surrogate’s Court-Act which, among other things, says, ‘1 Where it shall appear that a legatee, distributee, or beneficiary of a trust would not have the benefit or use or control of money or other property due him, or where other special circumstances make it appear desirable that such payment should be withheld, the decree may direct that such money or other property be paid into the surrogate’s court for the benefit of such legatee, distributee, beneficiary of a trust or such person or persons who may thereafter appear to be entitled thereto. Such money or other property so paid into court shall be paid out only by the special order of the surrogate or pursuant to the judgment of a court of competent jurisdiction.”
No formal proof has been presented by the petitioners tending to show that there is to any degree of certainty a likelihood that the beneficiary of the funds sought will actually be paid into his hands for his use and benefit. There was presented to the court with the petition herein a series of photostatic copies of documents, which the petitioners felt would indicate that the beneficiary would receive the funds, consisting of the following documents:
(a) A letter from the American Embassy in Moscow dated February 13, 1958, addressed to Isidor Ostroff which states that Soviet citizens who execute powers of attorney are required to identify themselves by presenting their Soviet internal passports.
(b) A letter dated May 1, 1957, Avritten by an assistant vice-president of Manufacturers Trust Company to a Mr. E. A. Shinkevich stating that the bank has forwarded payments to correspondents in Moscow for many years and that there are no Treasury Department Regulations forbidding such transactions.
(c) A copy of a letter from the Chemical Corn Exchange Bank, dated April 11, 1958, addressed to Wolf, Popper, Ross, *606 Wolf, and Jones, attorneys who represent the beneficiary under power of attorney, indicating that funds are remitted to individuals in the Soviet Union through the Bank for Foreign Trade, U. S. S. R. Moscow, via the Chase Manhattan Bank.
(d) A letter from the General Counsel of the United States Treasury Department dated January 30, 1959, addressed to Mr. Lakatos from Siting Arnold, Assistant General Counsel, referring to regulations which prevent the sending of funds to Hungary and referring to Treasury Department circular no. 655 and explaining that these regulations relate only to checks and warrants drawn upon funds of the United States and do not restrict the sending of private funds such as inheritances to persons in Hungary.
(e) A photostat which apparently shows the nature or form of a remittance made through the Guaranty Trust Company of New York to a Russian national.
(f) A photostat of a check drawn on the Guaranty Trust Company of New York to the order of the law firm of Wolf, Popper, Ross, Wolf and Jones for a client located in the U. S. S. R.
There was also submitted photostats of certain decisions made by certain Surrogates which had provided for the remission of funds to Soviet nationals under certain limited conditions.
The court, for its own information, inquired of the Treasury Department relative to any amendments which had been made to circular 655 above referred to and in response, a letter dated August 19, 1959, addressed to the court from C. L. Nouman, Assistant Chief, Investments Branch, Division of Deposits and Investments, was received stating that such circular pertains only to the issuance of Federal Government checks issued in favor of payees residing in certain areas outside the United States and would have no direct bearing on the transmission of private funds of individuals. All of which documents are appended to and are filed with this memorandum decision.
There has been no proof of any change in circumstances since the determination made in the Matter of Herz (7 Misc 2d 217), decided in Nassau County, which would indicate that there is any greater certainty now that the beneficiary, a Russian citizen, would actually receive the funds and the benefits thereof if they were transmitted to him in Russia.
In addition to the foregoing documents, there has been filed with the court a document purported to be an affidavit made by the beneficiary, Kuzma Dmitrievich Kuzmich in which he says, ‘ ‘ If the distributive share which is due me will be transmitted by the Court to the U. S. S. R, I will receive this money *607 in full and will be able to use it as I see fit, with full benefit for myself.” This affidavit, however, was signed not by the beneficiary, himself, he being illiterate, but at his personal request by some woman, a friend of said beneficiary. Such an affidavit does not convince the court that the act of signing such an affidavit is the free act of such individual. This affidavit and the translation thereof, with the certifications by the American Consul, is also appended to and filed with this memorandum decision.
No new actual facts are presented in the papers filed with the court showing circumstances existing in Russia which impel the court to reach a determination different from that reached in the Matter of Siegler (284 App. Div. 436) and Matter of Braier (305 N. Y. 148), both of which cases involved beneficiaries living in Hungary.
The court is doubtful that this beneficiary would have the benefit, use or control of the property in question.
The relief prayed for in the petition, therefore, is denied and the petition is hereby dismissed. Let decree enter accordingly.